UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN I. TAYLOR,

        Plaintiff,

v.                                      Case No. 18-CV-2033

NICHOLAS ZENS, *et al.*

        Defendants.

## DECISION AND ORDER

Plaintiff Steven I. Taylor, who is represented by counsel and confined at the Milwaukee Secure Detention Facility, brings this lawsuit under 42 U.S.C. § 1983. Taylor was allowed to proceed on a claim under the Fourth Amendment against defendants Nikolas Zens and Elizabeth Sauer for an unreasonable search pursuant to an arrest. The City of Milwaukee was named as a defendant for indemnification purposes only.

Taylor moved for partial summary judgment on the claim against Zens. (ECF No. 69.) The defendants moved for summary judgment on all claims. (ECF No. 73.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 20.)

## FACTS

*The Parties' Version of Events*

The facts are largely undisputed. On the night of September 11, 2018, non-defendant City of Milwaukee police officer Kody Wetzel witnessed a suspected drug

transaction, resulting in a pursuit of Taylor. (ECF No. 89, ¶¶ 1-2.) Wetzel cornered Taylor and ended up dragging him on the ground in order to handcuff him. (*Id.*, ¶ 3.) As a result of being dragged, Taylor's pants fell down, and when he was rolled on to his back to be handcuffed, his penis was exposed. (*Id.*, ¶ 5.) Defendants City of Milwaukee officers Nikolas Zens and Elizabeth Sauer observed Taylor's detainment and noticed a clear plastic baggie secured to his penis. (*Id.*, ¶ 7.)

Sauer told Taylor, "you have narcotics tied to your scrotum," to which Taylor replied, "go in my drawers and see." (ECF No. 85, ¶ 16.) Sauer responded, "I'm not going in there right now," and pulled up Taylor's pants. (*Id.*, ¶¶ 16-17.) Sauer and Zens then took Taylor to a squad car to conduct a search incident to an arrest. (*Id.*, ¶ 18.) Zens put on gloves and Sauer faced Taylor toward the squad car, securing his left arm. (ECF No. 89, ¶ 13.) Zens then approached Taylor from the right side and said, "Alright dude, I'mma give you one chance to tell me if it's there. Otherwise, I'm putting my hand down there and grabbing it." (*Id.*, ¶¶ 13-14.) It is undisputed that Taylor stated, "You can grab it." (*Id.*, ¶ 15.) However, in his materials supporting his motion for summary judgment Taylor stated he told Zens to grab the baggie "without choice." (ECF No. 72 at 3.) Taylor does not explain why he did not have a choice.

Zens then pulled Taylor's pants and underwear away from Taylor's body and reached down to retrieve the plastic baggie. (ECF No. 89, ¶ 16.) Taylor states that during the search his penis was exposed. (*Id.*) He also asserts that the search was conducted in front of a porch that had people on it and within the eyeshot of several houses. (*Id.*, ¶¶ 20-21.)

The defendants state that Zens did not pull Taylor's pants down to the point where his buttocks or his genitals would be exposed to onlookers. (ECF No. 85, ¶ 21.) They further note that, while Sauer could have seen Taylor's penis had she looked down, she did not look down or see his penis. (*Id.*, ¶ 22.) It is undisputed that for the duration of the search Sauer was shining a flashlight toward Taylor's pants, though Taylor asserts she shined the flashlight down his pants. (ECF No. 89, ¶ 18.)

After retrieving the plastic baggie Zens placed it in the squad car. (ECF No. 89, ¶ 17.) Taylor was then taken to a stationhouse located a mile or two from the scene of the arrest. (*Id.*, ¶ 23.) Zens asserts that he needed to retrieve the baggie before taking Taylor to the stationhouse because "Taylor could have slipped the handcuffs to the front of his body and discarded or destroyed the baggie in the squad car on the way to the stationhouse." (*Id.*, ¶ 25.) Zens, who was still in field training at the time of the incident, also admits that he was unaware that the search constituted a strip search. (*Id.*, ¶¶ 24, 28.)

*Videos from Body Cameras*

The parties have also introduced body camera videos from Zens and Sauer. (ECF Nos. 79, 80.) Neither video is at an angle to definitively show exactly how Zens searched Taylor. However, the videos show that, prior to retrieving the baggy, Zens and Sauer brought Taylor to the squad car and had him face the squad car to conduct the search. Additionally, the search was brief, under two minutes, and the search of his groin area was only a few seconds. It does not appear that his pants were pulled

3

down or that any part of him was exposed. The video also does not confirm whether there were onlookers. (ECF No. 79 at 1:15-3:15; ECF No. 80 at 1:45-3:45.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Taylor claims that Zens's search for the baggie was unreasonable under the Fourth Amendment and that Sauer failed to intervene to prevent a constitutional violation. The Fourth Amendment protects individuals against unreasonable searches of their persons, including "the right to be free from unreasonable searches of one's unclothed body." *Stanley v. Henson*, 337 F.3d 961, 963 (7th Cir. 2003.) However, "[w]hen a person is lawfully arrested, a police officer may conduct a 'relatively extensive exploration of the person' to find weapons or evidence of a crime." *Ragland v. City of Milwaukee,* 104 F.Supp.3d 958, 967 (E.D. Wis. 2015) (quoting *U.S. v. Robinson*, 414 U.S. 218, 227 (1979)). Such a search incident to arrest may become unreasonable where "it is conducted in a manner that is 'extreme or patently abusive.'" *Id.* (quoting *Campbell v. Miller*, 499 F.3d 711, 717 (7th Cir. 2007). To determine whether a search is reasonable, courts balance "'the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Stanley*, 337 F.3d at 964 (quoting *Bell v. Wolfish*, 411 U.S. 520, 559 (1979)).

Taylor does not contend that a strip search should not have been conducted, but takes issue with how Zens conducted the search—specifically, that it was conducted on a public street in full view of neighbors. Taylor discusses *Campbell v. Miller,* 499 F.3d

5

711 (7th Cir. 2007), at length. In *Campbell*, the plaintiff was arrested for suspected marijuana possession in the front yard of his friend's house. *Id.* at 713. After the arresting officers performed a pat down search and did not uncover any drugs, they decided to conduct a strip search. *Id.* at 714. The officers took the plaintiff to the backyard of his friend's house in full view of his friend and three other houses. *Id.* at 715. They pulled his pants down, exposing his buttocks, and had him lean forward. *Id.* They then had the plaintiff separate his buttocks in order to conduct a visual search of his anal cavity. *Id.* The Seventh Circuit Court of Appeals held that the search was unreasonable as a matter of law because it was conducted in full view of the plaintiff's friend, it extensively exposed his genitals, and the officers did not have justification for conducting an immediate strip search. *Id.* at 719.

What occurred here was not as extreme as what happened in *Campbell*. The scope of the intrusion was less severe. Unlike the plaintiff in *Campbell*, Taylor's buttocks were not exposed nor were his pants pulled all the way down. It is undisputed, and the body camera videos confirm, that Zens pulled Taylor's pants out rather than down. Also, the manner in which the search was conducted was not as extreme as it was in *Campbell*. Zens's search lasted only a few seconds—long enough for Zens to retrieve the baggie and, according to the body camera videos, was conducted in an efficient and professional manner. Unlike like the plaintiff in *Campbell*, Taylor was not made to act in a humiliating manner unnecessarily exposing himself by bending over or spreading his buttocks.

6

Additionally, Zens had a stronger justification for initiating the search. The officers in *Campbell* only had a hunch that the plaintiff possessed drugs—the pat down search did not uncover anything. Here, both Zens and Sauer saw the baggie prior to the search and knew it was there. While the search of Taylor was conducted on a public street, Taylor was shielded from the view of onlookers by the squad car. It was also very dark outside, which would hinder any onlookers' ability to have a clear view of the search. Finally, the court notes that Taylor twice explicitly consented to the manner of the search. He told Sauer to retrieve the drugs before being taken to the squad car. And when Zens gave him a chance to give him the drugs, it is undisputed that Taylor told Zens, "you can grab it." (ECF No. 89, ¶ 15.) Arguably, the consent alone is enough to render Zens's search of Taylor reasonable under the Fourth Amendment. *See U.S. v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994) (quoting *U.S. v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992) ("A consensual search is manifestly reasonable so long as it remains within the scope of consent.")[1]

Zens's search of Taylor was more akin to the search in *Ragland v. City of Milwaukee*, 104 F.Supp.3d 104 (E.D. Wis. 2015). There, after the detaining officer conducted a pat down search, she felt something near the plaintiff's testicles. *Id.* at 963. The detaining officer called over a male officer, who then pulled down the plaintiff's jeans. *Id.* The plaintiff was wearing basketball shorts underneath his jeans, and the male officer pulled back the waistband of the plaintiff's shorts, looking at his

---

[1] Because neither party raised this issue and instead presented arguments based on the reasonableness standard under *Bell v. Wolfish,* the court's analysis will focus on the applicable of the reasonableness standard.

genitals and buttocks. *Id.* There were several onlookers watching the searches unfold. *Id.*

District Court Judge Lynn Adelman found that the strip search was reasonable. Judge Adelman also distinguished *Campbell*, noting that the search in *Campbell* was more "comparatively intimate" than the search at hand. *Id.* at 969. He also noted that the search of Ragland was "relatively unobstrusive" and "a jury could not reasonably conclude that the search exceeded the scope of a permissible search incident to an arrest." *Id.*

Taylor also argues that the court must consider the fact that Zens's search was conducted in the presence of a female officer, Sauer. However, generally, the presence of a female officer alone is insufficient to make a search unreasonable. *See Courtney v. Devore*, 595 Fed. A'ppx. 618, 619-620 (7th Cir. 2014) (listing cases detailing when the presence of an opposite sex officer rises to the level of a constitutional violation).

The evidence does not demonstrate that Zens's search of Taylor was extreme or patently abusive. No reasonable jury could conclude that the search rose to the level of a constitutional violation. Because Zens's search does not rise to the level of a constitutional violation, Taylor's claim that Sauer failed to intervene fails. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (discussing *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) (Under *Filmore*, where it was determined that there was no underlying constitutional violation, the plaintiff could not establish a failure to intervene claim). Thus, Taylor's claims against the defendants fail as a matter of law.

8

## CONCLUSION

For the foregoing reasons, Taylor's motion for partial summary judgment is denied and the defendants' motion for summary judgment is granted. The defendants also argued they were entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Taylor's motion for partial summary judgment (ECF No. 69) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 73) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil

Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 9th day of September, 2022.

BY THE COURT

*William E. Duffin*
WILLIAM E. DUFFIN
United States Magistrate Judge